# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

TIBY SAUNDERS-GOMEZ,        )
                                    )
      Appellant,           )    C.A. No. N16A-03-003 FWW
                                    )
        v.                   )
                                    )
RUTLEDGE MAINTENANCE     )
CORPORATION,              )
                                    )
      Appellee.           )

Submitted: January 5, 2017
Decided: April 3, 2017

On Appeal from the Court of Common Pleas:
**AFFIRMED**.

## ORDER

Tiby Saunders-Gomez, *pro se*, 404 Pigeon View Lane, New Castle, Delaware 19720; Appellant.

Edward J. Fornias, III, Esquire, Law Office of EJ Fornias, P.A., 615 West 18th Street, Lower Level, Wilmington, Delaware 19802; Attorney for Rutledge Maintenance Corporation.

**WHARTON, J.**

This 3rd day of April, 2017, upon consideration of Appellant Tiby Saunders-Gomez's ("Appellant") Opening Brief, Appellee Rutledge Maintenance Corporation's ("Appellee") Answering Brief, Appellant's Reply Brief, and the record, it appears to the Court that:

1.  Appellant has owned a parcel of land in a housing development ("Rutledge") since 1994.[1] Appellant took possession of the lot subject to the Declaration, which has been in effect since December 18, 1991.[2] The Declaration requires all Rutledge lot owners to be members of a maintenance corporation.[3] Typically, all members of the maintenance corporation are required to pay an annual assessment in order to cover the costs associated with maintaining the open space in Rutledge.[4] If members fail to pay their annual assessment, the Declaration permits the maintenance corporation to take legal action against them.[5]

2.  Appellant allegedly failed to pay her annual assessment to Appellee from 2005 to 2013.[6]

---

[1] Appellee's App. to Answering Br., D.I. 11, at 6.

[2] *Id.* at 7.

[3] *Id.* at 1–2.

[4] *Id.* at 2. The annual assessment, "if necessary, shall be set by a majority vote of the members who are voting in person or by proxy at the annual meeting, and any special assessments shall be set by a majority vote of the members who are voting in person or by proxy at the annual meeting . . . ." *Id.*

[5] *Id.*

[6] *Id.* at 24. *See also Tiby Saunders-Gomez v. Rutledge Maint. Corp.*, CPU-13-003588, at 202:12-23 (Del. Com. Pl. Nov. 24, 2015) (TRANSCRIPT).

3. Appellee brought a debt action in the Justice of the Peace Court against Appellant to recover these outstanding assessments.[7] After considering testimony from both parties on November 13, 2013, the Justice of the Peace Court found that Appellant breached her contract with Appellee by failing to pay her annual assessments.[8] As a result, the Justice of the Peace Court awarded $1,989.05 to Appellee, plus $250.00 in attorney's fees, and 5.75% post-judgment interest per annum.[9]

4. On December 2, 2013, Appellant timely filed a Notice of Appeal to the Court of Common Pleas.

5. The Court of Common Pleas ("Trial Court") held a trial on November 23, 2015 and November 24, 2015. The Trial Court found that the plain language of the Declaration required Appellant to pay an annual assessment to Appellee upon Appellant's purchase of the Rutledge lot.[10] The Trial Court found that the total amount assessed to each lot owner in Rutledge from 2005 to 2013 was $1020.00.[11] However, the Trial Court found that Appellant failed to make any payments to Appellee during this time period.[12] Therefore, the Trial Court

---

[7] Appellee's App. to Answering Br., D.I. 11, at 22.
[8] *Id.*
[9] *Id.*
[10] *Tiby Saunders-Gomez*, CPU-13-003588, at 201:5-12.
[11] *Id.* at 202:10-21.
[12] *See id.* at 203:6-23; 204:1-18.

awarded $1020.00 to Appellee.[13] The Trial Court also awarded $42.01 to Appellee

for costs associated with sending certified letters to Appellant's residence that

demanded payment of the assessments.[14]  Finally, the Trial Court awarded

Appellee's counsel $8,975.83 in fees pursuant to a fee-shifting provision in the

Declaration.[15]

6.     On March 10, 2016, Appellant timely filed a Notice of Appeal to this

Court.

7.     On appeal, Appellant has submitted an Opening Brief that presents

challenges for the Court in performing its appellate function, as it no doubt did for

Appellee in answering.  The Court recognizes that *pro se* litigants are afforded a

certain measure of leniency in presenting their case to the Court.[16] However, "the

[*pro se* litigant's] brief at the very least must assert an argument that is capable of

---

[13] *Id.* at 204:15-18.  The Trial Court noted that, under the Declaration, Appellee would also be entitled to 6% per annum for any delinquencies in paying the assessments.  *Id.* at 204:19-23. However, Appellee withdrew any claims for interest because there "were obvious errors . . . in the calculation of the rolling balances from year to year." *Id.*  The Trial Court noted for the record that, had Appellee not withdrawn the interest claims, it "would have been hard pressed to find in [its] favor . . . ." *Id.* at 205:17-20.

[14] *Id.* at 206:1-11.

[15] Appellee's App. to Answering Br., D.I. 11, at 89–93.

[16] *See Torres-Rodriguez v. Young Leader Summer Camp (Manna Acad.)*, 2015 WL 3507952, at *4 (Del. Super. May 22, 2015).  *See also Gibbs v. United States Army*, 116 A.3d 427, 433 (Del. Super. 2014) ("Courts are at liberty to reasonably interpret a *pro se* litigant's filings, pleadings and appeals 'in a favorable light to alleviate the technical inaccuracies typical in many *pro se* legal arguments . . . .'" (quoting *McGonigle v. George H. Burns, Inc.*, 2001 WL 1079036, at *2 (Del. Super. Sept. 4, 2001)).

4

review."[17] The Court finds that some of Appellant's grounds for appeal are incapable of review because they are conclusory and lacking in any supporting legal authority, or, in one instance, incomprehensible.[18]

8. Appellant summarizes 11 arguments on appeal in the Summary of Arguments section of her Opening Brief.[19] Inexplicably, Appellant sets out only seven arguments in the Argument section.[20] Compounding the confusion, Appellant has included argument on various issues throughout the Statement of Facts section. Understandably confounded by the disorderly Opening Brief, Appellee has responded to 10 arguments it perceived raised by Appellant.

9. The Court first deals with those arguments presented in the Argument section. Unfortunately for purposes of appellate review, none of these seven arguments is very clearly presented, some are duplicative of others, and some are simply conclusory. For example, Arguments III, IV, and VI present no real argument at all. Rather, they are merely assertions that the Trial Court erred.[21]

---

[17] *In re Estate of Hall*, 882 A.2d 761, 761 (Del. 2005) (TABLE). *See also Joyner v. The News Journal*, 844 A.2d 991 (Del. 2003) (TABLE) ("Although the Court affords some degree of leniency to self-represented litigants as to briefing requirements, an appellant's opening brief, at a minimum, must be adequate so that the Court can conduct a meaningful review of the merits of the appellant's claims." (citing *Yancey v. Nat'l Trust Co.*, 712 A.2d 476 (Del. 1998) (TABLE)); *In re Asbestos Litig.*, 2012 WL 1995958, at *3 (Del. Super. May 31, 2012).

[18] *Flamer v. State*, 953 A.2d 130, 134 (Del. 2008) ("In order to develop a legal argument effectively, the Opening Brief must marshall the relevant facts and establish reversible error by demonstrating why the action at trial was contrary to either controlling precedent or persuasive decisional authority from other jurisdictions."); *In re Estate of Hall*, 882 A.2d at 761.

[19] Appellant's Opening Br., D.I. 16, at 5–8.

[20] *Id.* at 8–19.

[21] *Id.* 11–12.

5

Nonetheless, as best the Court can summarize, Appellant's arguments are: (1) the Justice of the Peace Court erred in finding that Appellee had complied with the requirements for providing a bill of particulars;[22] (2) the Trial Court did not have jurisdiction over the appeal because the mirror image rule was not satisfied, and the Trial Court improperly permitted an amendment of the complaint on appeal;[23] (3) the Trial Court erred when it denied Appellant's motion to compel discovery of a contract between Appellee and a property management company;[24] (4) the Trial Court erred when it denied Appellant's motion to join a party;[25] (5) the Trial Court failed to apply the correct statute of limitations;[26] (6) the Trial Court erred in some manner having to do with Supreme Court Rule 26, the "FDCPA law," and "grounds for mistrial on appeal" from the Trial Court;[27] and (7) the Trial Court improperly awarded excessive attorney's fees to Appellee's counsel.[28]

10.    The standard of review by the Superior Court for an appeal from the Trial Court is the same standard applied by the Supreme Court to appeals from the Superior Court.[29] In addressing appeals from the Trial Court, this Court is limited to correcting errors of law and determining whether substantial evidence exists to

---

[22] *Id.* at 8–9.
[23] *Id.* at 9–11.
[24] *Id.* at 11.
[25] *Id.*
[26] *Id.* at 12.
[27] *Id.*
[28] *Id.* at 12–13.
[29] *Robert J. Smith Co., Inc. v. Thomas*, 2001 WL 1729143, at *2 (Del. Super. Dec. 10, 2001).

support factual findings.[30] Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."[31] If factual findings are "sufficiently supported by the record and are the product of an orderly and logical[ly] deductive process," then they will not be challenged.[32] Questions of law are reviewed *de novo*.[33]

11. The Court first turns to Appellant's argument that the Justice of the Peace Court legally erred in finding that Appellee complied with the requirements for providing a bill of particulars. According to Justice of the Peace Court Rule 26(b), "[i]f the plaintiff is a corporation, partnership or other artificial entity, [the bill of particulars] shall be verified by an officer of the entity as defined in Supreme Court Rule 57(a)(3) or any representative certified pursuant to Supreme Court Rule 57." Appellant argues that Appellee failed to comply with Rule 26(b) because Appellee failed to have one of its officers verify the bill of particulars.

12. The Court finds that any alleged error committed by the Justice of the Peace Court is irrelevant for purposes of this appeal because the Trial Court tried this case *de novo*.[34] Pursuant to 10 *Del. C.* § 9571(c) and Court of Common Pleas Civil Rule 72.3(a), all appeals from the Justice of the Peace Court to the Court of

---

[30] *Henry v. Nissan Motors Acceptance Corp.*, 1998 WL 961759, at *1 (Del. Super. Oct. 21, 1998) (citing *Shahan v. Landing*, 643 A.2d 1357, 1359 (Del. Super. 1994)).
[31] *Thomas*, 2001 WL 1729143, at *2 (citing *Oceanport Indus., Inc. v. Wilmington Stevedores, Inc.*, 636 A.2d 892, 899 (Del. 1994)).
[32] *Levitt v. Bouvier*, 287 A.2d 671, 673 (Del. 1972).
[33] *Henry*, 1998 WL 961759, at *1.
[34] The Court is not suggesting that the Justice of the Peace Court erred, however.

7

Common Pleas are tried *de novo*.[35] "A *de novo* hearing on appeal from a Justice's court means a trial anew, whether of law or fact, according to the usual or required mode of procedure."[36] Indeed, § 9571 "requires that the parties begin anew, *as if proceedings in the lower court never took place*."[37] Therefore, because the Trial Court tried the case *de novo*, this Court limits its review to the Trial Court's decisions.

13. Second, Appellant argues that the Trial Court lacked jurisdiction over the appeal because Appellee did not satisfy Court of Common Pleas Civil Rule 72.3(f). Pursuant to Rule 72.3(f), "[a]n appeal to [the Court of Common Pleas] that fails to join the identical parties and raise the same issues that were before the court below shall result in a dismissal on jurisdictional grounds." Appellant argues that Rule 72.3(f), also known as the mirror image rule,[38] was not satisfied because the complaint on appeal improperly referenced the maintenance declaration of an adjacent housing development, instead of the Declaration at issue here.

14. The Court finds that the appeal to the Trial Court from the Justice of the Peace Court satisfied the mirror image rule. The mirror image rule is satisfied

---

[35] *See* § 9571(c) ("The appeal shall be a trial de novo."); Rule 72.3(a) ("This rule shall apply to appeals de novo from the Justice of the Peace Court to the Court of Common Pleas.").

[36] *See Church v. Cottman*, 1998 WL 733753, at *2 (Del. Super. June 18, 1998) (quoting *Cooper's Home Furnishings, Inc. v. Smith*, 250 A.2d 507, 508 (Del. Super. 1969)); *Wadsley v. Marino Eng'g Co.*, 1990 WL 140093, at *2 (Del. Super. Sept. 14, 1990) (citing *Cooper's Home Furnishings, Inc.*, 250 A.2d at 508).

[37] *Church*, 1998 WL 733753, at *3 (emphasis added).

[38] *McDowell v. Simpson*, 1857 WL 1024 (Del. Super. Oct. 1, 1857); *Sulla v. Quillen*, 1987 WL 18425, at *1 (Del. Super. Sept. 24, 1987).

8

"if the complaint on appeal presents no parties or issues other than those presented by the *original complaint* below."[39] Here, Appellee perfected appellate jurisdiction by bringing the same claims against Appellant as it did in the Justice of the Peace Court. Indeed, Appellee's complaint in the Justice of the Peace Court raised both debt and *quantum meruit* as causes of action against Appellant. Appellee's complaint in the Trial Court contained those same claims. The fact that the complaint on appeal references the wrong maintenance declaration does not change the essence of the pleading. Once appellate jurisdiction is perfected, "parties may seek to amend the pleadings or otherwise add or dismiss issues or parties."[40] Accordingly, Appellee was free to amend its complaint to correct the error because jurisdiction had already been perfected under Rule 72.3(f).

15.  Third, Appellant's argument designated "III" in the Argument section of her Opening Brief is a single sentence asserting that the Trial Court erred by not compelling discovery of a contract between Appellee and BC Community, a property management company, and including a reference to 11 lines of trial

---

[39] *See Silverview Farm, Inc. v. Laushey*, 2006 WL 1112911, at *4 (Del. Com. Pl. Apr. 26, 2006) (emphasis added). *See also Fossett v. DALCO Constr. Co.*, 858 A.2d 960 (Del. 2004) (TABLE); *Sulla*, 1987 WL 18425, at *1; *McDowell*, 1857 WL 1024; *Four Corners Fin. Grp. v. Augeley*, 2011 WL 3655149, at *5 (Del. Com. Pl. Aug. 3, 2011) ("The purpose Rule 72.3(f) is to 'prevent this [C]ourt from acquiring subject matter jurisdiction over an appeal *de novo* from the Justice of the Peace Court, unless the appeal from the court below contains the identical: 1) parties, 2) character or right in which the parties are sued, and 3) cause and form of action.'" (citations omitted)).

[40] *Silverview Farm, Inc.*, 2006 WL 1112911, at *4. *See Four Corners Fin. Grp.*, 2011 WL 3655149, at *5; *Levy's Loan Office v. Folks*, 2009 WL 1856642, at *2 (Del. Com. Pl. June 26, 2009).

transcript.[41] The Court finds that there was no error committed by the Trial Court in denying Appellant's motion to compel production of the contract. The relationship between Appellee and the property management company was simply irrelevant to the issue at trial—whether Appellant owed her annual assessments. Moreover, Appellant has offered no substantive argument in support of her assertion.

16. Fourth, Appellant's argument designated "IV" in the Argument section of her Opening Brief is another single sentence, this time asserting that the Trial Court erred by denying her motion to join a party, as well as violating unspecified due process rights of Appellant. Appellant includes a citation to 10 lines of transcript.[42] Those lines merely refer to the Trial Court's earlier denial of the motion.[43] A transcript of the actual ruling on the motion has not been cited. It appears, however, that Appellant sought the joinder of the property management company on appeal to the Trial Court. The Trial Court observed in connection with Appellant's renewed motion to compel on the day of trial that the time for adding parties had long since passed. On appeal, Appellant makes no substantive argument in support of her assertion.

---

[41] Appellant's Opening Br., D.I. 16, at 11.
[42] *Id.*
[43] *Tiby Saunders-Gomez*, CPU-13-003588, at 4–5.

17.   Fifth, Appellant argues that the Trial Court legally erred by finding that the statute of limitations did not bar some of Appellee's contract claims. While it is difficult to understand Appellant's argument, Appellant appears to assert that the account in this case is not a "mutual and running account." Pursuant to 10 *Del. C.* § 8106, an action to enforce a contract has a three-year statute of limitations. The statute of limitations begins to accrue at the time of the breach.[44] In the case of a mutual and running account between parties, however, the statute of limitations "shall not begin to run while such account continues open and current."[45] Here, if the account is not a mutual and running account, as Appellant seems to suggest, then, according to Appellant, Appellee's contract claims from 2005 to 2010 would be time-barred.

18.   It is clear to the Court that the account was not a "mutual and running account." At best it was a running account, since Appellee's unpaid debt, along with interest, continued to accrue. However, there was none of the mutuality (or reciprocity) necessary for a "mutual and running account" because Appellee never incurred any reciprocal obligation to Appellant that would offset any of Appellant's obligations to Appellee.[46]

---

[44] *See Wright v. Dumizo*, 2002 WL 31357891, at *2 (Del. Super. Oct. 17, 2002) (citing *Snyder v. Balt. Trust Co.*, 532 A.2d 624, 627 (Del. Super. 1986)).

[45] *See* 10 *Del. C.* § 8108.

[46] *See id.* The statute does not define "mutual and running account." For a detailed analysis regarding what constitutes a mutual and running account, see *AM Gen. Holdings LLC v. The Renco Grp., Inc.*, 2016 WL 4440476, at *8–*11 (Del. Ch. Aug. 22, 2016) (Slights, V.C.).

11

19. This conclusion does not end the matter though, since Appellee's claims are subject to the twenty-year common law statute of limitations. It is well-established under Delaware law that instruments evidenced by seal are subject to the common law twenty-year statute of limitations.[47] Here, the Declaration provides that all Rutledge lot owners shall pay an annual assessment to the maintenance corporation. The Declaration is a recorded instrument under seal.[48] On September 6, 1994, NVR Homes Incorporated conveyed the lot by deed to Appellant. The deed granted the lot to Appellant subject to the Declaration. Appellant's deed is likewise evidenced by seal.[49] Thus, Appellant's "obligation to pay assessments is both created and evidenced by the sealed Declaration and her sealed Deed subject to the Declaration restrictions."[50] As such, the twenty-year limitations period applies, and none of Appellee's claims are time-barred under § 8106.

20. Sixth, Appellant asserts that the Trial Court erred in concluding that

> the debt was verified under the Supreme Court Rule 26 and the
> FDCPA law was not applicable to BC Community that held out

---

[47] *See Whittington v. Dragon Grp., LLC*, 991 A.2d 1, 10 (Del. 2009) ("Under Delaware law, a contract under seal is subject to a twenty-year statute of limitations. However, exactly what constitutes a sealed instrument [that is not a mortgage or deed] under Delaware law is not clear because there is a conflict in the trial courts' decisions . . . ." (citing *Aronow Roofing Co. v. Gilbane Bldg. Co.*, 902 F.2d 1127, 1127–28 (3d Cir. 1990)). *See also Sea Villa Homeowners Ass'n, Inc. v. Lavine*, 2016 WL 1035741, at *3 (Del. Com. Pl. Feb. 24, 2016) (stating that instruments evidenced by seal are excluded from the three-year statute of limitations).

[48] Appellee's App. to Answering Br., D.I. 11, at 1–5.

[49] *Id.* at 6–8.

[50] *Sea Villa Homeowners Ass'n, Inc.*, 2016 WL 1035741, at *4.

12

in the demand that '[t]his is an attempt to collection a debt' check payable to Back Creek maintenance Corp. noted in the ans. av #38 and this is gounds for mistrial on appeal from Del. CCP.[51]

The Court finds this argument incomprehensible. Moreover, Appellant has offered no substantive argument in support of this assertion.

21. Seventh, Appellant argues that the Trial Court abused its discretion by awarding attorney's fees to Appellee's counsel. Appellant argues that the Trial Court should not have awarded fees to Appellee's counsel because the Trial Court incorrectly ruled in Appellee's favor. Alternatively, Appellant argues that the fees awarded to Appellee's counsel were "excessive" and that the Trial Court incorrectly interpreted the request for attorney's fees as uncontested.[52]

22. After reviewing the record, the Court finds that the Trial Court did not abuse its discretion by awarding attorney's fees in the amount of $8,975.83 to Appellee's counsel. After the Trial Court ruled in favor of Appellee on November 24, 2015, it requested Appellee's counsel to submit an affidavit detailing the costs associated with the litigation. The affidavit contained a detailed accounting of all work completed by Appellee's counsel during the case. The Trial Court thereafter applied the factors set forth under Rule 1.5 of the Delaware Lawyers' Rules of Professional Conduct to counsel's affidavit and thoroughly explained that the

---

[51] Appellant's Opening Br., D.I. 16, at 13.
[52] *Id.* at 6–7.

13

requested fees were reasonable. As the Trial Court noted, this was a "straightforward breach of contract action," and the attorney's fees would have been significantly lower but for Appellant's "excessive motion practice."[53] The Court agrees with this finding, and in addition, it cannot find anything in the record to suggest that the Trial Court's determination was arbitrary or capricious. Further, it appears that, to the extent Appellant opposed the award of attorney's fees, she opposed it on the basis that the Trial Court incorrectly decided the case, a different issue than the reasonableness of the fees themselves. The Court affirms the decision to award attorney's fees because it agrees with the Trial Court on all of the issues raised.

23. Although not argued, and hence deemed abandoned on appeal by the Court, the Court nonetheless addresses two other issues raised by Appellant in her Summary of Arguments section. The Court does so because they implicate the fairness and impartiality of the Trial Court. Appellant argues that the Trial Court impermissibly engaged in *ex parte* communications with Appellee's counsel during trial. Appellant argues that these communications violated her right to a fair and impartial trial. In particular, during a recess in the trial, Appellee's counsel received a voicemail on his cell phone regarding his condominium. When the Trial Court took the bench following a recess, Appellee's counsel disclosed the

---

[53] Appellee's App. to Answering Br., D.I. 11, at 91.

situation to the Trial Court and asked for additional time to resolve the matter. The Trial Court granted this request. However, Appellant was not present for these communications. Appellant contends that these communications warrant a reversal of the Trial Court's decision.

24. The Court finds that the Trial Court did not engage in improper *ex parte* communications with Appellee's counsel. Pursuant to Rule 2.9(A) of the Delaware Judges' Code of Judicial Conduct, "[a] judge . . . should neither initiate nor consider *ex parte* or other communications concerning a pending or impending proceeding." The Comment on Rule 2.9(A), however, states that the Rule is not "intended to preclude communications between a judge and lawyers . . . concerning matters which are purely procedural, such as those which pertain to scheduling, and which in no way bear on the merits of the proceeding." In this case, the record contains no evidence suggesting that the discussions between the Trial Court and Appellee's counsel involved the merits of the case. Rather, the record indicates that the communications were purely procedural in nature. The Trial Court explicitly noted on the record that the "conversation had nothing to do with this case or this trial. It had something to do with Mr. Fornias' law practice and an emergency underway back at his office."[54] In addition, the Trial Court noted that two bailiffs and a law clerk were present during the communications in

---

[54] *Tiby Saunders-Gomez*, CPU-13-003588, at 254:18-23.

15

order to ensure fairness.[55] Accordingly, the Court finds that these communications did not prejudice Appellant, nor did they violate her right to an impartial trial.

25. Next, Appellant asserts, without supporting argument, that the Trial Court abused its discretion when it declined to recuse itself from the proceeding. Appellant moved for the Trial Court to remove itself from the case, arguing that the Trial Court had an implicit bias towards Appellant. Appellant contended that the Trial Court's denial of her previous motions was evidence of the Trial Court's implicit bias. Moreover, Appellant alleged in her motion that the Trial Court disrespected Appellant by telling her that "she lacks understanding."[56]

26. The Court finds that the Trial Court did not err when it declined to recuse itself from the proceeding below. When addressing a motion for recusal on grounds of personal bias or prejudice, a judge must engage in a two-part analysis.[57] "First, the judge must subjectively determine that she can proceed to hear the case free of bias or prejudice. Second, once the judge has subjectively determined that she has no bias, she must then objectively determine whether, actual bias aside, there is an appearance of bias sufficient to cause doubt about her impartiality. If an objective observer viewing the circumstances would conclude that a fair or impartial hearing is unlikely, recusal is appropriate. The judge must make both

---

[55] Id.

[56] Appellee's App. to Answering Br., D.I. 11, at 56–57.

[57] See Fritzinger v. State, 10 A.3d 603, 611 (Del. 2010) (citing Los v. Los, 595 A.2d 381, 384 (Del. 1991)).

16

determinations on the record."[58]   On appeal, the Court reviews the Trial Court's subjective analysis for abuse of discretion, but reviews the merits of the objective analysis *de novo*.[59]   Here, for unknown reasons, the record on appeal does not contain a transcript of the Trial Court's ruling on the recusal motion.[60] Nevertheless, the evidence in the record that has been provided to the Court does not support Appellant's allegations.   Rather, Appellant's arguments are based solely upon her dissatisfaction with the Trial Court's rulings on her motions.   The Court finds Appellant's dissatisfaction, without more, to be an insufficient basis to raise a genuine issue of recusal, especially in light of the Trial Court's exemplary patience in dealing with an especially litigious *pro se* defendant.[61]

**THEREFORE**, the decision of the Court of Common Pleas is hereby **AFFIRMED**.

**IT IS SO ORDERED.**

_____
Ferris W. Wharton, J.

---

[58] *Id.* (citations omitted).
[59] *Id.*
[60]   Had Appellant actually pursued this argument on appeal, and not abandoned it by failing to support it, the absence of a transcript could have been remedied.
[61] *See State v. Desmond*, 2011 WL 91984, at *8 (Del. Super. Jan. 5, 2011) ("Defendant's filings reveal his dissatisfaction with this Court's rulings, but this is nothing more than Defendant's subjective [and unsubstantiated] allegations of bias.").

17

SUPERIOR COURT OF THE STATE OF DELAWARE
NEW CASTLE COUNTY COURTHOUSE
500 NORTH KING STREET, SUITE 10400
WILMINGTON, DE 19801-3733
0203100

OFFICIAL BUSINESS, PENALTY FOR PRIVATE USE $300

FWW
SUPERIOR COURT OF THE STATE OF DELAWARE
NEW CASTLE COUNTY COURTHOUSE
500 NORTH KING STREET, SUITE 10400
WILMINGTON, DE 19801-3733
0203100

"Official Business, Penalty For Private Use $300.00"

Tiby Saunders-Gomez
404 Pigeon View Lane
New Castle, DE 19720



02 1P
0000886379
MAILED FROM ZIP CODE 19801
UNITED STATES POSTAGE
$ 001.61⁰
APR 03 2017
PITNEY BOWES